IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WOODROW WILLIAMS II O/B/O, | § | |
| Z.D., A MINOR, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-686-Y |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
|     DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

I.  STATEMENT OF THE CASE

Plaintiff Woodrow Williams ("Williams"), on behalf of minor Z.D., filed this action

pursuant to Section 405(g) of the Social Security Act for judicial review of a final decision of the

Commissioner of Social Security denying Z.D.'s claim for child insurance benefits ("CIB")

under the Social Security Act ("SSA").  *See* 42 U.S.C. § 423.  On July 26, 2004, Woodrow

Williams ("Williams") filed applications for a period of disability and disability insurance

benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of

the Social Security Act ("SSA").  (Tr. 14.)  In October 2004, the SSA determined that Williams

had been disabled since April 25, 2004.  (Tr. 14.)  Thereafter, in April 2005, Jennifer Wood

("Wood"), Williams' wife, filed an application for CIB on behalf of Z.D., the biological son of

Wood and the stepson of Williams.  (Tr. 14, 70-73.)  Pursuant to the application being approved,

Wood began receiving child's insurance benefits as the representative payee for Z.D.  (Tr. 14,

64-65, 74-76.)

In November 2005, Wood left the household and Z.D. remained with Williams.  (Tr. 14,

125, 237.)  Subsequently, in or around January 2006, the SSA suspended payments to Z.D. until

a new qualified representative payee could be found.  (Tr. 14, 79-90, 125.)  Williams claims that

an SSA employee advised him to file for divorce and obtain custody of Z.D. and then benefits

for Z.D. would resume.  (Tr. 14, 125, 239.)  In a divorce decree dated July 9, 2007, Williams was

awarded primary custody of Z.D. and Wood was given visitation rights and ordered to pay child

support.  (Tr. 14, 38-60, 125, 175-197.)  After taking the divorce decree to the SSA office, SSA

appointed Williams as the representative payee and resumed paying monthly benefits to Z.D. and

paid the suspended back benefits as well.  (Tr. 14, 91-92, 95-99, 125.)

In November 2007, Williams returned to the SSA to inquire about another matter.  (Tr.

14, 125.)  An SSA employee began to question Williams about Z.D. and Z.D.'s eligibility to

receive benefits due to the fact that the divorce had terminated William's relationship with Z.D.

as Williams' stepson.  (Tr. 14, 125, 240.)  On November 12, 2007, the SSA sent a letter to

Williams stating that Z.D. was no longer qualified to receive social security benefits as of August

2

2007, the date when Wood and Williams had divorced.  (Tr. 14-15, 21-24, 100-03; *see* Tr. 27-29, 106-08, 125-26.)

On November 13, 2007, Williams filed a Request for Reconsideration, which was denied by the SSA in a Notice of Reconsideration dated December 26, 2009.  (Tr. 15, 25, 104, 115-16, 133-134.)   On September 8, 2010, a hearing was held before an administrative law judge ("ALJ") at which Williams appeared and testified with the assistance of David Price ("Price"), a non-attorney representative.  (Tr. 15, 232-50; *see* Tr. 33, 119.)

On October 22, 2010, the ALJ issued a decision finding that Z.D. was not entitled to CIB based upon Williams' disability because the evidence did not establish that there was an agreement by Williams to adopt Z.D.  (Tr. 11-18.)  Williams filed a request for review, and the Appeals Council, on July 26, 2012, denied his request, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 4-9, 227.)

## II.  STANDARD OF REVIEW

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988); *see Morris ex rel. Morris v. Bowen*, 646 F. Supp. 363, 364 (W.D. Tex. 1986); *Flores v. Heckler*, No. SA-80-CA-551, 1985 WL 71730, at *1-2 (W.D. Tex. Mar. 20, 1985). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than preponderance.  *Id.*   A finding of no substantial evidence is

3

appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*
This Court may neither reweigh the evidence in the record nor substitute its judgment for the
Commissioner's, but will carefully scrutinize the record to determine if the evidence is present.
*Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUE

The sole issue presented by Williams in this case is whether Williams met the test for
equitably adopting Z.D. so that Z.D. may qualify for CIB under the SSA. (Plaintiff's Brief
("Pl.'s Br.") at 1.)

## IV. ADMINISTRATIVE RECORD

In his October 22, 2010 decision, the ALJ determined that Z.D. was not entitled to CIB
on the disability record of Williams because Z.D. was not the equitably adopted child of
Williams. (Tr. 14-17.) In making this determination, the ALJ set forth the procedural history of
the case. (Tr. 14-15.) Next, the ALJ reviewed the testimony of Williams and the arguments of
Price at the hearing. (Tr. 15-16.) In making his determination, the ALJ stated:

> In this case, there is no question but that the child qualified for benefits as Mr.
> Williams' stepson while Mr. Williams was married to the child's mother. For the
> period thereafter, the child can qualify for benefits only if he can establish that he
> is Mr. Williams' equitably adopted child.
>
> The child may be eligible for benefits as an equitably adopted child if Mr.
> Williams has agreed to adopt him, but the adoption has not occurred. The
> agreement to adopt must be one that would be recognized under State law, so that
> the child would be able to inherit a child's share of Mr. Williams' personal
> property if Mr. Williams died without leaving a Will. The agreement must be in
> whatever form that State law direct, and the child must meet whatever
> requirements for performance under the agreement that State law directs. In this
> case, the law of Texas is controlling, because Mr. Williams had his permanent

home in Texas at the time the child filed his application. *See* 20 C.F.R. § 404.359 and 42 U.S.C. § 216(h)(2)(A).

For equitable adoption, all of the following must exist: An express contract to adopt the child (in Texas, the contract may be oral and may be implied), some legal consideration for the adopting parent's promise to adopt, surrender of the child to the adopting parent, performance by the child under the contract, and a sufficient lapse of time so that the child could have been legally adopted under applicable State law before the time of the child's application. In Texas, a promise to give the child inheritance rights in the adopting parent's personal property is not required, and the six-month waiting period may be waived. *See also* Program Operations Manual System ("POMS") GN 00306.175 and GN 00306.225.

For an equitable adoption to be present under Texas law, there must be clear and convincing evidence of an agreement or contract to adopt. The evidence for such an agreement need not be direct. It can be established by the acts, conduct, and admissions of the parties, together with other relevant facts and circumstances. An equitable adoption can be established if the conduct of the concerned individuals clearly, unequivocally, and convincingly demonstrates the requisite agreement. The contract to adopt must consist of a present promise to adopt, as opposed to a mere desire or intent to adopt in the future. Social Security Ruling 88-5c.

The claimant's representative has relied on *Broussard v. Weinberger*, 499 F.2d 969 (5th Cir. 1974) to support his contention that an equitable adoption has occurred. *Broussard* is distinguishable from this case, however. In *Broussard*, the child's mother had completely rejected the child. The child's mother in this case has sued to obtain custody, and she has exercised her Court-awarded visitation rights and currently pays child support. In addition, the Court had to infer Mr. Broussard's intent because he was deceased. In this case, Mr. Williams is alive and available to express his intent.

Mr. Williams has not taken any action to adopt due to financial constraints. He pointed out that adoption will not give him any greater rights under Texas law. While there may be a desire to adopt, and while there may be an intention to adopt in the future, there is not a present promise to adopt. In the absence of a present promise to adopt, there is not a contract or agreement to adopt. In the absence of a contract or agreement to adopt, the child does not qualify as an equitably adopted child under the laws of Texas.

(Tr. 16-17.) Based on the above analysis, the ALJ found that Z.D. was not entitled to CIB on the disability record of Williams as the wage earner. (Tr. 17-18.)

## V. DISCUSSION

The SSA provides, as relevant here, that an individual is entitled to CIB on the earnings record of an insured who is entitled to disability benefits if the individual: (1) is an insured person's child; (2) is dependent on the insured; (3) applies for the CIB; (4) is unmarried; and (5) is under the age of 18. *See* 20 C.F.R. § 404.350(a). In this case, the only issue is whether Z.D. is the child of Williams, who has been found disabled and entitled to benefits under the SSA. An individual qualifies as an insured person's child if the individual is a natural child, a legally adopted child, a stepchild, a grandchild, a step grandchild, or an equitably adopted child. *See* 20 C.F.R. § 404.354. Since Williams and Woods, Z.D.'s biological mother, are now divorced, Z.D. can no longer qualify as the stepchild of Williams. Instead, Z.D. can only qualify if he is an equitably adopted child of Williams.

Section 404.359 of Title 20 of the Code of Federal Regulations, which pertains to equitably adopted children, states:

> You may be eligible for benefits as an equitably adopted child if the insured had agreed to adopt you as his or her child but the adoption did not occur. The agreement to adopt you must be one that would be recognized under State law so that you would be able to inherit a child's share of the insured's personal property if he or she were to die without leaving a will. The agreement must be in whatever form, and you must meet whatever requirements for performance under the agreement, that State law directs. . . . If you apply for child's benefits during the insured's life, the law of the State where the insured has his or her permanent home at the time of your application will be followed.

6

20 C.F.R. § 404.359; *see* 42 U.S.C. § 402(d)(1). Equitable adoption is based in Texas on an estoppel theory and applies "when efforts to adopt are ineffective because of failure to strictly comply with statutory procedures or because, out of neglect or design, agreements to adopt are not performed." *Luna v. Estate of Rodriquez*, 906 S.W.2d 576 (Tex. App.—Austin 1995, no pet.) ("'[When] one . . . takes a child into his home as his own, receiving the benefits accruing to him on account of that relation, assumes the duties and burdens incident thereto, and . . . where justice and good faith require it[,] the court will enforce the rights incident to the statutory relation of adoption.'") (quoting *Cubley v. Barbee*, 73 S.W.2d 72, 81 (1934)). In Texas, the elements of an equitable adoption are: (1) the existence of an agreement to adopt and (2) performance by the child. *Luna*, 906 S.W.2d at 581; *see Cavanaugh v. Davis*, 235 S.W.2d 972 (1951). As to element one, it is not necessary for the party seeking the benefit of the adoption "to show a formal agreement, or use of the word 'adoption' in the formal sense at the pertinent times." *Broussard v. Weinberger*, 499 F.2d 969, 970 (5th Cir. 1974); *see Morris ex rel. Morris v. Bowen*, 646 F. Supp. 363, 365 (W.D. Tex. 1986) (stating that an equitable adoption requires clear and convincing evidence of an agreement or contract to adopt but the evidence for such an agreement need not be direct and could be "proved by the acts, conduct, and admissions of the parties, along with other relevant facts and circumstances"). "That requirement would conflict with the remedial purposes of the Social Security Act, and the requirement for liberal construction in favor of coverage if such a construction is reasonable." *Broussard*, 499 F.3d at 970. However, the contract or agreement to adopt "must consist of a present promise to adopt, as opposed to a mere desire or intention to adopt in the future." *Morris*, 646 F. Supp. At 365.

7

As stated above, the Court's only function in this case is to determine whether the evidence relied on by the ALJ in making his determination provides substantial support for such determination. The ALJ found, *inter alia,* that Z.D. was not the equitably adopted child of Williams as there was not clear and convincing evidence of an agreement or contract to adopt because Williams had testified that he had not taken any further action to adopt Z.D. due to financial constraints. (Tr. 17.) While the Court is not sure that this fact, standing alone, would be enough evidence to support the ALJ's determination, *see Moore v. Heckler*, No. H-83-6403, 1985 WL 71821, at *3 (S.D. Tex. Oct. 29, 1985), there is additional evidence, as pointed out by the ALJ, that Woods, Z.D.'s biological mother, would not agree to such an adoption. (Tr. 17; *see* Tr. 237-38, 243-44.) Based on prior case law, gaining the consent of the natural parent, either expressly or impliedly through the natural parent's actions, seems to be one important factor in determining whether there was an agreement to adopt, and in turn, an equitable adoption.[1]

Williams argues, citing to *Reed on Behalf of Reed v. Chater*, 925 F. Supp. 466, 467-48 (E.D. Tex. 1996), that such factor is not controlling, especially in light of all the other evidence in the record. (Pl.'s Br. at 10-11.) In *Reed*, a child brought an action to challenge the denial of his application for CIB after the death of his life-long caretaker, Sam Reed ("Reed"). Reed was

---

[1] *See, e.g., Broussard*, 499 F.2d at 970 (finding that the evidence, which included that the boy's natural mother abandoned him at birth, provided him with no assistance, and repeatedly stated to the appellant that she and her husband could have the boy all the time, supported a finding that there was an agreement or contract to adopt as required in an adoption by estoppel); *Morris*, 646 F. Supp. at 366 (finding that several factors, including that the natural mother never rejected her child, supports the Secretary's findings that there was no agreement to adopt); *Moore v. Heckler*, No. H-83-6403, 1985 WL 71821, at * (S.D. Tex. Oct. 29, 1985) (finding that the Secretary erred in denying that the child had been equitably adopted based on the evidence in the record, including evidence that the child's mother abandoned him at birth and is currently imprisoned in the penitentiary); *Flores*, 1985 WL 71730, at *2 (finding that the ALJ failed to comment, *inter alia*, on the affidavit of the natural father indicating that the decedent had approached him and obtained his consent to formal adoption and that such factor weighed strongly in favor of a finding of equitable adoption).

8

not biologically related to the child, and Reed cared for and treated the child as if the child were Reed's own.  The Court found that the overwhelming indirect evidence showed that Reed agreed to adopt the child and an equitable adoption existed.   However, contrary to William's interpretation, it appears that the biological mother of the child, who was fifteen years old at the time of the child's birth, essentially had abandoned the child.  Furthermore, the child's mother even testified on behalf of Reed, stating that Reed, in essence, took care of the child as his own son and did everything for the child.  Thus, although not clear, it appears that even in *Reed* there was evidence that the child's mother would have consented to an agreement with Reed to adopt the child.

Based upon all the evidence in the record, the Court concludes that the ALJ's decision that Z.D. is not the equitably adopted child of Williams is supported by substantial evidence. Because substantial evidence supports the ALJ's disability determination and such determination has not been shown to be a product of legal error, remand is not required.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected).

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

9

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until November 5, 2013 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

10

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 22, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

11